IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | 2:21-CR-006-Z-BR-(1) |
| STEVEN ANTHONY REINHART (1), | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

The Court considers two motions: Defendant's Motion to Compel Compliance with Subpoena ("Motion to Compel") (ECF No. 71) and Ford Motor Credit Company's Cross-Motion to Quash Subpoena ("Motion to Quash") (ECF No. 76). Reinhart alleges that Ford Motor Credit Company ("FMCC") ignored a valid subpoena and asks this Court to order compliance. In the alternative, he asks the Court to retroactively cure any procedural mistakes related to that subpoena. FMCC alleges that Reinhart violated the parties' agreement, improperly served the subpoena, and sought inadmissible documents.

The Court agrees that Reinhart improperly served his subpoena and **FINDS** that it has no power to retroactively cure that procedural defect. The Court accordingly **GRANTS** FMCC's Motion to Quash, **DENIES** Reinhart's Motion to Compel, and **QUASHES** the subpoena. The Court declines to decide the issue of admissibility today. Should Reinhart correctly refile a substantially similar subpoena, the Court will then decide whether that subpoena requests admissible documents after a normal briefing schedule.

I. **PROCEDURAL HISTORY**

This Court sentenced Steven Anthony Reinhart ("Reinhart") after he pleaded guilty to misprision of wire fraud. *United States v. Reinhart*, No. 22-10103, 2023 WL 5346053, at *2 (5th Cir. Aug. 16, 2023). Reinhart's Presentence Report ("PSR") calculated an advisory guidelines range of 21 to 27 months imprisonment and recommended a restitution payment in the amount of $40.2 million dollars — the total loss attributable to fraud committed by Reagor Dykes Auto Group ("RDAG") — paid, jointly and severally with his codefendants. *Id.* Reinhart objected at sentencing, arguing in part that he should only pay restitution for his own fraudulent activities and not those of his codefendants at the other five RDAG dealerships. Nor, Reinhart argued, should he pay restitution for fraud that occurred prior to his employment. *Id.* This Court overruled Reinhart's objections, sentenced him to only six months imprisonment, and ordered him to pay $40,254,297.72 in restitution to FMCC. *Id.*

But the Fifth Circuit agreed with Reinhart on appeal. *Id.* at *5. It then remanded the case to this Court to conduct further fact finding — specifically what amount of the RDAG-caused harm is attributable to Reinhart and whether any of these losses were recouped — and adjust its restitution finding if necessary. *Id.* This Court complied and ordered Reinhart and the Government to file briefs identifying "with factual detail" the "actual loss directly or proximately caused by [Reinhart's] offense." ECF No. 60. This Court continued the applicable briefing deadline three times so Reinhart could find information he considered necessary to this Court's new restitution finding. ECF Nos. 65, 68, 74. But, after protracted conversations between Reinhart and FMCC, the parties agree on nothing related to the subpoenas — other than the necessity of this Court's intervention.

2

Both parties dispute the legal force of a subpoena served by Reinhart on FMCC. Reinhart originally moved this Court to (1) compel compliance with that subpoena, (2) issue a show-cause order for noncompliance, or (3) issue a Rule 17(c)(3) subpoena. ECF No. 71. FMCC then responded with a cross-motion to quash Reinhart's subpoena. ECF No. 76. FMCC concedes that it withheld information sought by Reinhart but argues it permissibly did so. Specifically, FMCC argues that Reinhart's subpoena (1) violates the parties' agreement, (2) failed to abide by the textual requirements of Rule 17(c)(3) of the Federal Rules of Criminal Procedure, (3) demands irrelevant and confidential information, and (4) was improperly served on Ford Credit's counsel. ECF No. 76 at 2.

## II.  LEGAL ANALYSIS

Criminal Defendants may obtain confidential or personal information about victims by serving subpoenas on third parties. But they may only do so by following the requirements of Federal Rule of Criminal Procedure 17(c)(3). That Rule requires court approval prior to issuance of a subpoena and only after proper notice to the victim. A court may not retroactively cure an improperly served subpoena after the issuing party violates the procedural requirements of Rule 17. Because Reinhart failed to follow the text of Rule 17(c)(3), this Court quashes his subpoena.

**A. Federal Rule of Criminal Procedure 17(c)(3) governs Reinhart's subpoena.**

Federal Rule of Criminal Procedure 17(c) "governs issuance of subpoenas duces tecum in federal criminal proceedings." *United States v. Nixon*, 418 U.S. 683, 697–98 (1974). Relevant here, Rule 17(c)(3) provides the sole avenue for criminal defendants to obtain personal or confidential information about a crime victim from a third party. *See, e.g., United States v. Llanez-Garcia*, 735 F.3d 483, 498 (6th Cir. 2013). Because FMCC is obviously a third party to this case,

Rule 17(c)(3) governs Reinhart's subpoena if (1) FMCC is a victim of Reinhart's crime and (2) the subpoena requests personal or confidential information from FMCC.

Here, both parties agree that FMCC is a victim of Reinhart's fraud. *See* ECF Nos. 71 at ¶ 16 ("FMCC . . . falls within the definition of 'victim' under the MVRA."); 75 at 8 (agreeing with Reinhart). So does the Court. Although Rule 17 does not itself define "victim," the protections it provides are aimed at implementing provisions of the Crime Victim Rights Act ("CVRA"), which in turn defines "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. Section 3771(e)(2)(A); *see also United States v. Anderson*, No. 1:22-CR-9, 2023 WL 3229949, at *3 (W.D. Pa. May 3, 2023) (tracing the definition of "victim" under Rule 17(c)(3)). Here, FMCC — fronting the money for RDAG's inventory — suffered a financial loss directly or proximately caused by Reinhart's federal crime. *Reinhart*, 2023 WL 5346053 at *6 (describing Reinhart's actions "to deceive FMCC and unlawfully enrich RDAG, himself, and others"). FMCC, therefore, satisfies the definition of "victim" under Rule 17(c)(3).[1]

Reinhart's subpoena also requests personal or confidential information about FMCC. Specifically, Reinhart requests (1) documents and records related to settlement agreements, (2) payments made pursuant to settlement agreements, and (3) documents showing changes in titles for various vehicles. ECF No. 71 at ¶ 17. As relayed by FMCC, these requests encompass confidential settlements. ECF No. 75 at 8. Without access to the documents that FMCC possesses, the Court is inclined to credit FMCC's sworn representation to the confidentiality of these documents. At any rate, Reinhart implicitly concedes the confidential nature of the documents he requests by asking this Court to approve a Rule 17(c)(3) subpoena. *See* ECF No. 71 at ¶ 16

---

[1] FMCC falls within the definition of "victim" despite being an entity instead of a natural person. *See* ECF No. 71 (citing *United States v. Richardson*, 67 F.4th 268, 271 (5th Cir. 2023)).

(requesting the Court to issue a Rule 17(c)(3) subpoena out of "an abundance of caution"). Because Reinhart's subpoena requests confidential documents from a victim of his crime, Federal Rule of Criminal Procedure 17(c)(3) governs his subpoena.

### B. Reinhart violated Rule 17(c)(3).

Under Rule 17(c)(3), subpoenas "may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3). Before entering that order, the issuing party must give notice to the victim so that he or she may move to quash or modify the subpoena. *Id.* These two requirements — Court order and notice — are strictly enforced unless the issuing party can show exceptional circumstances for noncompliance. Here, Reinhart failed to comply with either requirement and cannot show that exceptional circumstances justify his noncompliance.

#### 1. This Court did not order issuance of Reinhart's subpoena.

"Rule 17(c)(3) states that 'a subpoena requiring the production of personal or confidential information about a victim may be served on a third party *only* by court order.'" *United States v. Llanez-Garcia*, 735 F.3d 483, 498 (6th Cir. 2013) (citing Fed. R. Crim. P. 17(c)(3)); *see also United States v. Nix*, 251 F. Supp. 3d 555, 560 (W.D.N.Y. 2017) ("Rule 17(c)(3) is clear that Court approval must be obtained . . . ."). This Court order requirement is strictly enforced at all stages of litigation. *See Nix*, 251 F. Supp. 3d at 563–64 (rejecting view that pre-trial production excuses court order requirement); *United States v. Anderson*, No. 1:22-CR-9, 2023 WL 3229949, at *3 (W.D. Pa. May 3, 2023) ("[T]he Defendant could not properly subpoena pre-hearing evidentiary items without leave of this Court."); *United States v. Davitashvili*, No. CR 21-255, 2022 WL 1265819, at *2 (E.D. Pa. Apr. 28, 2022) ("Rule 17(c)(3) creates an exception requiring a court order when the subpoena seeks a victim's confidential information.").

Here, Reinhart failed to comply with the court order requirement. Instead, he served subpoenas directly on counsel for FMCC without the involvement of this Court. ECF No. 71 ¶¶ 4, 7. That Reinhart sought to preserve "judicial economy" without "involving the Court," — while usually admirable — dooms the validity of his subpoena here. *Id.* at ¶ 13. Because Reinhart failed to first obtain a court order, the Court must quash his subpoena.

### 2. Reinhart did not provide notice to FMCC.

Rule 17(c)(3) requires defendants to give notice to a defendant prior to seeking personal or confidential information, except when "exceptional circumstances" are present. *United States v. Wills*, 40 F.4th 330, 336 (5th Cir.), *cert. denied*, 143 S. Ct. 464 (2022). "Uniformly, federal courts have held that notice of a subpoena to a victim or their representatives is mandatory under Rule 17(c)(3) before a court may issue a subpoena." *United States v. Glenn*, 341 F.R.D. 217, 220 (N.D. Ohio 2022) (citing *United States v. Latimore*, No. 08-CR-20633, 2010 WL 148231, at *2 (E.D. Mich. Jan. 11, 2010); *United States v. Vanskike*, No. 18–40055–HLT, 2019 WL 2137284, at *1, 3 (D. Kan. May 16, 2019); *United States v. Begay*, No. CR 14–0747 JB, 2018 WL 401265, at *1, 12 (D.N.M. Jan. 12, 2018); *United States v. Levine*, No. 17–CR–55V(Sr), 2019 WL 2097912, at *1, 2 (W.D.N.Y. May 14, 2019)). That notice requirement rises above a mere "perfunctory" or "eventual notice" to a victim. *United States v. Lussier*, No. 21-CR-145 (PAM/LIB), 2022 WL 17476661, at *9 (D. Minn. Oct. 11, 2022), *report and recommendation adopted*, No. CR 21-145 (PAM/LIB), 2022 WL 17466284 (D. Minn. Dec. 6, 2022). Instead, the Rule itself contemplates notice to afford victims sufficient time to "move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3).

Reinhart failed to provide notice to FMCC as required by Rule 17(c)(3). Reinhart argues that an "11th hour objection to a subpoena" necessitated his motion to compel. ECF No. 71 at ¶ 13.

6

That objection occurred on January 2, 2024, and Reinhart filed his motion to compel the next day. ECF No. 71 at ¶ 12. The earliest that Reinhart could have served notice that he was seeking a court order enforcing a Rule 17(c)(3) subpoena was therefore one day before he filed his motion. Wherever the outer bonds of the notice requirement may lie, 24 hours falls far short of Rule 17(c)(3)'s implicit "sufficient time" requirement for a victim to "move to quash or modify the subpoena." *Lussier*, 2022 WL 17476661, at *9 (citing Fed. R. Crim. P. 17(c)(3). And FMCC's "11th hour objection" occurred only *after* Reinhart failed to comply with the procedural requirements of Rule 17(c)(3). So any surprise caused by FMCC's late objection is directly attributable to Reinhart's own procedural errors, negating any finding of exceptional circumstances. This Court, therefore, must quash Reinhart's subpoena for failure to provide adequate notice to FMCC.

### C. This Court will not retroactively bless Reinhart's subpoena.

Reinhart alternatively asks this Court to compel compliance with his subpoena by ordering the Court Clerk to enter a subpoena pursuant to Rule 17(c)(3). ECF No. 71 at ¶ 16. The theory goes, one assumes, that Reinhart's subpoena can still compel FMCC to provide requested documents if the Court overlooks procedural errors and treats the Motion to Compel as the first step in the Rule 17(c)(3) process. But Reinhart cites no authority, and the Court is aware of none, that allows an improperly issued Rule 17 subpoena to be retroactively cured after the fact. Doing so would seem to contradict the requirements of Rule 17 and allow improperly issued subpoenas to become enforceable upon merely pleading a redo when challenged. Reinhart may apply for this Court to approve a *new* Rule 17(c)(3) subpoena, but the Court will not retroactively cure Reinhart's procedural errors.

### III. CONCLUSION

Because Reinhart failed to follow the procedural requirements of Federal Rule of Criminal Procedure 17(c)(3) the Court **GRANTS** FMCC's Motion to Quash Reinhart's Subpoena (ECF No. 76) and **DENIES** Reinhart's Motion to Compel (ECF No. 71). The Court emphasizes that it never considered a validly issued subpoena today, so it expressly **DECLINES** to adjudicate the enforceability of this subpoena had it been validly issued. Neither party should read this Order as reaching any decision on the merits of such a hypothetical subpoena. Although the parties admirably briefed this Court on the relevant law during a rushed briefing schedule, all parties — including the Court — would benefit from a closer review of the relevant law before deciding the admissibility of the documents that Reinhart requests. Rule 17(c)(3) provides that opportunity and, should Reinhart reissue his subpoena, the Court will consider those arguments with the benefit of a normal briefing schedule.

**SO ORDERED**.

February 27, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE