IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               2:21-CR-006-Z-BR-(1)

STEVEN ANTHONY REINHART,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Steven Anthony Reinhart's Motion for Court Order to Issue Rule 17(c)(3) Subpoena ("Motion") (ECF No. 81), which asks this Court to order the District Clerk to issue a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c)(3) to Non-Party Ford Motor Credit Company ("FMCC" or "Ford Credit"). For the reasons stated below, the Subpoena is **MODIFIED**, and the Motion is **GRANTED IN PART**.

## I.   Procedural History

This Court sentenced Steven Anthony Reinhart ("Reinhart") after he pleaded guilty to misprision of wire fraud. *United States v. Reinhart*, No. 22-10103, 2023 WL 5346053, at *2 (5th Cir. Aug. 16, 2023). Reinhart's Presentence Report ("PSR") calculated an advisory guidelines range of 21 to 27 months imprisonment and recommended a restitution payment in the amount of $40.2 million dollars — the total loss attributable to fraud committed by Reagor Dykes Auto Group ("RDAG") — paid, jointly and severally with his codefendants. *Id.* Reinhart objected at sentencing, arguing in part that he should only pay restitution for his own fraudulent activities and not those of his codefendants at the other five RDAG dealerships. Nor, Reinhart argued, should he pay restitution for fraud that occurred prior to his employment. *Id.* This Court overruled Reinhart's

objections, sentenced him to only six months imprisonment, and ordered him to pay $40,254,297.72 in restitution to FMCC. *Id.*

But the Fifth Circuit agreed with Reinhart on appeal. *Id.* at *5. It then remanded the case to this Court to conduct further fact finding — specifically what amount of the RDAG-caused harm is attributable to Reinhart and whether any of these losses were recouped — and adjust its restitution finding if necessary. *Id.* This Court complied and ordered Reinhart and the Government to file briefs identifying "with factual detail" the "actual loss directly or proximately caused by [Reinhart's] offense." ECF No. 60. This Court continued the applicable briefing deadline three times so Reinhart could find information he considered necessary to this Court's new restitution finding. ECF Nos. 65, 68, 74. But, after protracted conversations between Reinhart and FMCC, the parties agree on nothing related to the subpoenas — other than the necessity of this Court's intervention.

Reinhart filed a motion to compel FMCC to respond to his subpoena. ECF No. 71. FMCC opposed the motion and filed a motion to quash the subpoena. ECF No. 76. This Court granted FMCC's motion "[b]ecause Reinhart failed to follow the procedural requirements of Federal Rule of Criminal Procedure 17(c)(3)." ECF No. 80. This Court emphasized "it never considered a validly issued subpoena" so it declined "to adjudicate the enforceability of [the] subpoena had it been validly issued." *Id.*

On February 28, 2024, Reinhart filed a new Motion for Court Order to Issue Rule 17(c)(3) Subpoena. ECF No. 81. FMCC objected once more. ECF No. 82. In turn, Reinhart provided supplemental briefing which this Court now addresses. ECF No. 86.

## II. LEGAL ANALYSIS

Defendants bear the burden of showing that the documents they seek are relevant to the charges being prosecuted, specifically identified, and are admissible. *United States v. Nixon*, 418 U.S. 683, 700 (1974). Because Reinhart makes a sufficient showing of relevancy and admissibility but fails the specificity requirement, the Subpoena is **MODIFIED**, and the Motion is **GRANTED IN PART**.

### A. Federal Rule of Criminal Procedure 17(c)(3) governs Reinhart's subpoena.

Federal Rule of Criminal Procedure 17(c) "governs issuance of subpoenas duces tecum in federal criminal proceedings." *Nixon*, 418 U.S. at 697–98. Relevant here, Rule 17(c)(3) provides the sole avenue for criminal defendants to obtain personal or confidential information about a crime victim from a third party. *See, e.g., United States v. Llanez-Garcia*, 735 F.3d 483, 498 (6th Cir. 2013). Because FMCC is obviously a third party to this case, Rule 17(c)(3) governs Reinhart's subpoena if (1) FMCC is a victim of Reinhart's crime and (2) the subpoena requests personal or confidential information from FMCC.

Here, both parties agree that FMCC is a victim of Reinhart's fraud. *See* ECF Nos. 71 at ¶ 16 ("FMCC . . . falls within the definition of 'victim' under the MVRA."); 75 at 8 (agreeing with Reinhart). So does the Court. Although Rule 17 does not itself define "victim," the protections it provides are aimed at implementing provisions of the Crime Victim Rights Act ("CVRA"), which in turn defines "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. Section 3771(e)(2)(A); *see also United States v. Anderson*, No. 1:22-CR-9, 2023 WL 3229949, at *3 (W.D. Pa. May 3, 2023) (tracing the definition of "victim" under Rule 17(c)(3)). Here, FMCC — fronting the money for RDAG's inventory — suffered a financial loss directly or proximately caused by Reinhart's

3

federal crime. *Reinhart*, 2023 WL 5346053 at *6 (describing Reinhart's actions "to deceive FMCC and unlawfully enrich RDAG, himself, and others"). FMCC, therefore, satisfies the definition of "victim" under Rule 17(c)(3).[1]

Reinhart's subpoena also requests personal or confidential information about FMCC. Specifically, Reinhart requests (1) documents and records related to settlement agreements, (2) payments made pursuant to settlement agreements, and (3) documents showing changes in titles for various vehicles. ECF No. 81 at ¶ 15. As relayed by FMCC, these requests encompass confidential settlements. ECF No. 82 at 8–9. Without access to the documents that FMCC possesses, the Court is inclined to credit FMCC's sworn representation to the confidentiality of these documents. At any rate, Reinhart implicitly concedes the confidential nature of the documents he requests by asking this Court to approve a Rule 17(c)(3) subpoena. Because Reinhart's subpoena requests confidential documents from a victim of his crime, Federal Rule of Criminal Procedure 17(c)(3) governs his subpoena.

### B. Reinhart's Motion seeks relevant information.

The first hurdle — relevancy — requires the movant to establish the information he seeks is relevant. Doing so requires "more than the title of a document and conjecture as to its contents." *United States v. Gas Pipe, Inc.*, No. 3:13-CR-298-M, 2018 WL 5262361 at *1–2 (N.D. Tex. June 18, 2018) (citing *United States v. Arditti*, 955 F.2d 331, 345 (1992)). Movant must give reasons that permit a "rational inference of relevance[.]" *Arditti*, 955 F.2d at 346. And evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence[.]" FED. R. EVID. 401; *United States v. Skilling*, No. CRIM. H-04-025, 2006 WL 1006622 at *2 (S.D. Tex. Apr. 13, 2006).

---

[1] FMCC falls within the definition of "victim" despite being an entity instead of a natural person. *See* ECF No. 71 (citing *United States v. Richardson*, 67 F.4th 268, 271 (5th Cir. 2023)).

Here, Reinhart's Motion requests:

a. All documents and records reflecting the settlement agreement(s) between Ford Motor Credit Company (FMCC) and any Reagor-Dykes Automotive Group (RDAG) entity, by whatever name known, arising out of any bankruptcy proceeding involving an RDAG entity.

b. All documents and records reflecting any payments made by FMCC to an RDAG entity pursuant to any settlement agreement(s) referred to above.

c. All documents and records reflecting any payments made by FMCC to an RDAG entity as a result of any settlement between those parties.

d. All documents (or even a summary of the same) showing changes of title for the following vehicles identified by VIN number, which FMCC claims were sold out of trust from the Lubbock Mitsubishi store (the basis for the Government's restitution calculation) . . . .

ECF No. 81.

FMCC claims the settlement agreement with the Creditor's Trustee has "no bearing on the harm RDAG's undisputed fraud caused to Ford Credit," nor does it "have any bearing on the amount Defendant will be ordered to pay as restitution to Ford Credit, as the largest victim of RDAG's fraud." ECF No. 82 at 9. FMCC is half right. While settlement payments bear no relevance on the harm initially caused by Reinhart, they do adjust what restitution Reinhart still owes. *See United States v. Richardson*, 67 F.4th 268, 271 (5th Cir. 2023) ("In other words, '[t]he MVRA does not permit restitution awards to exceed a victim's loss . . . . The court may not award the victim a windfall.'") (quoting *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006)). Reinhart adequately explained how these documents are relevant.

FMCC has admitted that "[i]f successful, the Creditors' Trustee claims would have required Ford Credit to disgorge some or all of those pre-bankruptcy payments for equitable distribution amongst all creditors (including Ford Credit)." ECF No. 82 at 9. Even a settlement of the Creditor's claims would require FMCC to disgorge money for redistribution. And any money recouped via settlement must be credited to restitution. 18 U.S.C. Section 3664(j)(2)(A)

5

("Any amount paid to a victim under an order of restitution should be reduced by any amount later recovered as compensatory damages for the same loss by the victim[.]"). Whether or not FMCC has recovered any amount of its losses caused by the fraud is relevant to Reinhart's restitution calculation.

Therefore, Reinhart's first request, which seeks documents pertinent to the settlement agreement, is relevant. ECF No. 81. Reinhart's second and third requests, while redundant, are relevant for the same reasons. *Id.* His fourth, which identifies vehicle identification numbers ("VINs") used to support the Government's restitution calculation, is facially relevant. *Id.* Reinhart calculating the correct restitution amount becomes more probable with the requested evidence. Further, Reinhart's requested documents will aid this Court in its mandate to "support every dollar of a restitution order with record evidence." *United States v. Mathew*, 916 F.3d 510, 516 (5th Cir. 2019). Reinhart has evidenced a "sufficient likelihood" that the requested documents are "relevant to the offenses charged in the indictment." *Arditti*, 955 F.2d at 345 (citing *Nixon*, 418 U.S. at 700).

### C. Reinhart's Motion requests admissible evidence.

The second hurdle — admissibility — requires a "sufficient preliminary showing that each of the subpoenaed [documents] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. The Rules of Evidence do not apply at sentencing proceedings and "the appropriate standard regarding the admissibility of evidence at sentencing is substantially lower than the governing admissibility at trial." Fed. R. Evid. 1101(d)(3); *see United States v. McCaskey*, 9 F.3d 368, 380 (5th Cir. 1993); *see, e.g., Williams v. New York*, 337 U.S. 241, 246–51 (1949) (acknowledging the unique discretion a sentencing judge has in acquiring evidence); *see also United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (explaining that defendant's showing "need not, however, be as detailed or concrete as the proffer required to move

a document into evidence at trial."). The relevant standard should not vary as applied to third party requests. *See, e.g., United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (concluding the *Nixon* "Court extended the admissibility requirement of Rule 17(c) to materials held by third parties"); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("We see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.").

"Rule 17's admissibility requirement does not require the court to make a determination that the requested [documents] are admissible — only that they may reasonably be used as admissible evidence." *United States v. Brown*, No. CR H-17-567-1, 2023 WL 5672836 (S.D. Tex. Sept. 1, 2023). And a district court at sentencing "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Section 6A1.3(a); *McCaskey*, 9 F.3d at 380.

Here, under this deferential standard, Reinhart makes an adequate showing that the documents and information requested will be reliably accurate as they are all business records of FMCC. "[T]he inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, [and] by actual experience of business in relying upon them[.]'" *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001); *see Matthews v. United States*, 217 F.2d 409, 413 (5th Cir. 1954) (explaining that records in which a business relies upon to conduct its day-to-day affairs are innately reliable and accurate). Business records are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial."

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Accordingly, the Court **FINDS** that the documents would be admissible.

### D. Parts of Reinhart's Motion are sufficiently specific.

The final hurdle — specificity — requires the subpoena provide a description that "contains sufficient details to identify the particular materials sought and demonstrates a request for evidence, and not an improper attempt to expand discovery." *United States v. Ocasio*, No. EP-11-CR-2728-KC, 2013 WL 12442496 at *5 (W.D. Tex. May 28, 2013) (citing *United States v. Carriles*, 263 F.R.D. 400, 405 (W.D. Tex. 2009)). "Specificity serves to prevent a subpoena from being converted into a license for a 'fishing expedition to see what may turn up.'" *United States v. Brown*, No. CR H-17-567-1, 2023 WL 5672836 (S.D. Tex Sept. 1, 2023) (quoting *Bowman Dairy Co. v. United States,* 71 S. Ct. 675, 679 (1951)); *see Gas Pipe, Inc.*, 2018 WL 5262361 at *2 ("[I]f the requesting party 'cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.'").

This standard does not necessitate "the subpoena designate each particular paper desired. It is sufficient if kinds of documents are designated with reasonable particularity." *2 Fed. Prac. & Proc. Crim.* 3d § 275 (2008); *see, e.g., United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) ("Yet in the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity.").

Reinhart's first request seeks "*all* documents and records" from unspecified settlement agreements "arising out of *any* bankruptcy proceeding involving an RDAG entity." ECF No. 81 at 5 (emphasis added). Reinhart cites *Bowman*, in which the Supreme Court upheld

8

a broad subpoena for "all documents, books, papers and objects" that "are relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants." ECF No. 86 at 12. Notwithstanding, the Fifth Circuit has outlined that specificity requires "more than the title of a document and conjectures as to its contents." *Arditti*, 955 F.2d at 345. Courts have found that subpoenas for documents from a non-party are too broad when the document seeks "all documents." *Edgefield Holdings v. Gilbert,* No. 3:17-MC-74-N-BN, 2018 WL 1138516 (N.D. Tex. Mar. 2, 2018); *see United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (finding defendant's Rule 17(c) subpoena failed the specificity required by *Nixon* because it sought "all records, documents, reports, telephone logs, etc"); *see also United States v. Shelley*, No. CR-16-237-d, 2017 WL 3470940 (W.D. Okla. Aug. 11, 2017) (denying a Rule 17(c) subpoena which requested "any and all documents"); *see also United States v. Maxwell*, No. 20-CR-330, 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021) ("The use of the terms 'all' and 'any' do not evince specificity."). Reinhart fails to specify the documents or even the pertinent bankruptcy proceeding, "forcing the court to speculate as to the specific nature of their contents and its relevance." ECF No. 81 at 5; *Arditti*, 955 F.2d at 346. "Defendant has cast a very large net." *United States v. Cartwright*, No. 1:22-CR-081, 2024 WL 22819, at *3 (D.N.D. Jan. 2, 2024).

Reinhart's second and third requests, similarly, fail in adequately specifying the relevant documents. Reinhart requests documents "reflecting *any* payments made by FMCC to *an* RDAG entity as a result of *any* settlement" "referred to above" or "between those parties." ECF No. 81 at 5 (emphasis added). Reinhart's vague requests, broadly referencing parties and settlement agreements, should not persuade the Court that it is anything but an improper attempt to expand discovery.

9

Reinhart's fourth request is the most specific. Reinhart identifies 55 vehicles — specifically by VIN — which FMCC has already identified as sold out of trust and the Government used in its restitution calculation. ECF No. 81 at 5–8; ECF No. 67 at 17. That request demonstrates a proper request for evidence, not an impermissible expansion of discovery. *See, e.g., Brown*, 2023 WL 5672836, at *4 (finding a request for 14 specific cellular phone numbers tied to specifically identified government witnesses sufficiently specific).

The Court **FINDS** that Reinhart's request for records related to 55 vehicles satisfies Rule 17(c)'s specificity requirement but that his requests for unspecified settlement agreements and alleged payments made pursuant to the agreements do not. Accordingly, this Court **MODIFIES** the subpoena, specifically Reinhart's first, second, and third request. The Court narrows the subpoena to apply only to the settlement agreement(s) between FMCC and RDAG relating to vehicles sold out of trust from the Lubbock Mitsubishi store. *United States v. Skelos*, No. 15-CR-317, 2018 WL 2254538, at *21 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (finding the request met the specificity requirement of *Nixon* because it specified communication, with a particular party, on a particular subject matter); *Brown*, 2023 WL 5672836, at *4 (reasoning that the motion was sufficiently specific because it identified particular parties, a specified period of time, and a discrete subject matter).

"[F]ortune alone will not open the Rule 17(c) door." *Arditti*, 955 F.2d at 345 (Goldberg, J., concurring). Defendants bear the burden of showing that the documents they seek are relevant to the charges being prosecuted, specifically identified, and are admissible. *Nixon*, 418 U.S. 683 at 700. Accordingly, because Reinhart has made a sufficient showing of relevancy and admissibility but has failed the last hurdle of specificity, the Subpoena is **MODIFIED**, and the Motion is **GRANTED IN PART**.

### E. FMCC's request for a protective order is granted.

Because FMCC alleges that some of its documents are confidential, the Court **GRANTS** its unopposed request to produce its documents under seal and pursuant to a protective order. ECF No. 82 at 15–16. The Court **ORDERS** that responsive documents and information, including those concerning FMCC's confidential settlement with the Creditors' Trustee shall be sealed and protected from public disclosure.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Reinhart's Motion and **MODIFIES** Reinhart's Subpoena.

**SO ORDERED.**

August 30, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE